**Robert J. FOLEY, Plaintiff and Appellant,**

v.

**Judith A. FOLEY, Defendant and Appellee.**

No. 15970.

Supreme Court of South Dakota.

Argued April 25, 1988.

Decided Aug. 31, 1988.

Barbara Anderson Lewis of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for plaintiff and appellant.

Lois Ann Rose of Rose & Piersol, Sioux Falls, for defendant and appellee.

SABERS, Justice.

Husband appeals trial court finding that original decree awarded alimony and determination that alimony award be modified.

### Facts

Robert (Husband) and Judith (Wife) Foley were divorced in 1981. In 1987, Wife petitioned the trial court[1] for modification of the alimony award. Husband contended that the periodic payments awarded to Wife under the 1981 divorce decree were not alimony, and if such payments were alimony, no change of circumstances had occurred to justify modification.

The trial court determined that the periodic payments were, in part, alimony and that Wife had proven sufficient change in circumstances to justify modification. The trial court ordered Husband to pay alimony of $250 per month for five years, terminable upon Wife's remarriage or death. The trial court also denied Husband's motion to stay payment of this alimony award pending appeal.

Husband claims the trial court erred in determining that the periodic payments were alimony, that a change of circumstances supporting modification had occurred, that the motion to stay payment on appeal should be denied, and that the parties should each pay one-half of the mortgage payments until the marital home was sold.

### 1. DID 1981 DECREE AWARD ALIMONY TO WIFE?

Husband claims the facts support the conclusion that the periodic payments at issue were either property settlement, child support or "lump sum or gross" alimony awarded in lieu of property.

The most relevant portions of the 1981 Findings of Facts and Conclusions of Law are Conclusions of Law # 4 and # 5 which state:[2]

4.

The defendant wife is entitled to and shall be awarded the following sums to be paid by plaintiff as support and maintenance for the children and herself:

    a. the house payment, consisting of principal, interest and insurance, presently in the sum of $518.00 per month;

    b. for utilities, food, and necessaries, the sum of $176.00, per month;

that said sums be payable to the Clerk of Courts, ... that one-half of said total sum shall be payable on the first (1st) day of each month and one-half on the fifteenth (15th) day of each month, until

---

1. The 1980 divorce trial was heard and the decree was entered (in 1981) by former Circuit Judge Christensen. The petition for modification was heard and decided by Circuit Judge Kean. Neither party is represented by their original trial counsel.

2. These Conclusions are substantially the same as the provisions of the decree of divorce which ordered Husband to pay these sums "as support and maintenance for the children and the defendant [Wife]."

the youngest child reaches the age of 18 or finishes high school, whichever happens last.

5.

That the title to the family home ... shall remain in joint tenancy and provided that defendant wife should be awarded the possession thereof until the youngest child completes his high school education or becomes age 18, whichever happens last; or until such time as the defendant might remarry; and provided further, that upon the happening of any such event, the property be sold and that after the payment of the expenses of sale, the defendant be awarded seventy percent (70%) and the plaintiff be awarded thirty percent (30%) of the proceeds remaining.

## A. Property Settlement

Husband argues that the periodic payments awarded to Wife are property settlement which are not subject to modification. *Rousseau v. Gesinger,* 330 N.W.2d 522 (S.D.1983); *Holt v. Holt,* 84 S.D. 671, 176 N.W.2d 51 (1970). He claims that the payments were intended to build equity in the marital home in which Wife had a 70% interest. Neither party treated the payments as alimony for federal income tax purposes. Husband contends that the 1981–82 proposed stipulation on tax treatment of the payments was drafted solely for the purpose of acquiring a more advantageous tax treatment. Additionally, Wife wanted the stipulation to require Husband to increase the amount of the payments to offset any tax liability to her. Husband relies on *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985) to support his argument. However, he fails to note that much of the analysis of the agreement in *Malcolm* relates to the interpretation of a contract, which was the document at issue. In the instant case, the trial court was attempting to interpret and effectuate the provisions of the original court's judgment of divorce.

Wife responds that if the periodic payments were property settlement then the trial court did not award any child support.

She claims this is not the case and that Husband's argument is refuted by the very words of the decree: "support and maintenance for the children and the defendant [Wife]." She refers the court to the findings and conclusions which identify and divide the marital assets. She argues that the percentages of equity in the home awarded each party were adjusted after the trial court determined that Husband's military pension was not a marital asset. If the periodic payments were property settlement, she argues, then it would have been logical for the trial court to adjust those payments.

## B. Gross or Lump Sum Alimony or Child Support

Husband claims that, if payments are not a property settlement, they are an award of "gross or lump sum alimony." This court stated in *Holt* that "unqualified" awards of gross or lump sum alimony are subject to the same finality applied to property divisions. The reason is that "lump sum" alimony is frequently given in lieu of property. Husband contends these payments were for a definite period and were not subject to termination upon Wife's death or remarriage, therefore, the payments were lump sum alimony.

Husband claims alternatively that if the payments are neither property settlement nor lump sum alimony, then they are child support which appropriately terminates upon the youngest child's emancipation or graduation, whichever is later.

Wife argues that although the decree does not use the words "alimony" or "child support," the 1987 trial court was correct in determining that the decree provided for such awards. She asserts that the terms utilized by Judge Christensen are consistent with the terms used in the alimony and child support statutes, SDCL 25–4–41 and 25–7–7. She also claims an award of alimony is consistent with the facts in this case and the factors to be considered by the trial court: Husband was found to be at fault; the parties had disproportionate earning capacities; and the temporary support of $800 per month was only reduced by $106

to final support of $694 even though the number of children covered went from four down to one. She contends that the Findings of Fact, specifically #16, that Wife needs support and Husband is capable of paying support for Wife, are consistent with an award of alimony. Finally, she disagrees with Husband that the decree's provisions are so ambiguous that it is necessary to refer to the correspondence between the parties' counsel and the court.

This court has frequently urged trial courts to make findings of fact and conclusions of law and has discouraged appealing parties from relying upon memorandum opinions or extraneous materials when such findings and conclusions are made. *Cf. Lien v. Lien*, 420 N.W.2d 26, 28 (S.D. 1988). Therefore, it was not inappropriate for Judge Kean to rely upon Judge Christensen's Findings and Conclusions in determining what was awarded to Wife in 1981. In reviewing that determination, this court need not go beyond the original decree.

The trial court found the periodic house payments were alimony because continued payment was conditioned upon occupancy of the residence and no remarriage by Wife. Husband claims that a fair reading of Conclusions of Law #4 and #5 show that only Wife's possessory interest in the home was conditioned upon remarriage; the payments were to terminate only upon the youngest child's emancipation or graduation.

It appears from Conclusions #4 and #5 of the original decree, that the monthly payments of $694 per month are terminable only upon the graduation or emancipation of the youngest child. Wife's possessory interest in the house is terminable upon remarriage or the child's emancipation/graduation. Therefore, if Wife had remarried prior to the child's emancipation/graduation, the payments would have continued, even though the house would be sold. Although this provision initially appears consistent with an award of child support, it is inconsistent with the Conclusion awarding the payments, in part, for Wife's support and with Finding #16, and #10, which states that Wife "needs the possession thereof."

If the 1981 decree had simply awarded monthly support payments to Wife and the child without direction as to the expenditure of those sums, then the economic situation at that time would have required Wife to move from the marital home and to pay rent for other housing. By directing the support money back into the home, the decree intended to accomplish two goals: support for the Wife and unemancipated child(ren) and increase the value of the marital asset.

■ The end result of the provisions of the 1981 decree is the same as if the trial court had awarded Wife 70% of the marital home as property settlement and ordered Husband to pay $694 per month child support and alimony until the child graduated or was emancipated. Therefore, we cannot say that the trial court was clearly erroneous in finding that "the portion of the periodic support payments directed to be applied to the house is construed as alimony."

## 2. A CHANGE IN CIRCUMSTANCES

■ SDCL 25-4-41 allows the trial court to modify support orders "from time to time."[3] No modification of an alimony award can be made unless there is a change of circumstances from those which existed at the time of the original decree. *Lambertz v. Lambertz*, 375 N.W.2d 645 (S.D.1985). The burden of proving such a change in circumstances is on the party seeking modification. *Wegner v. Wegner*, 391 N.W.2d 690 (S.D.1986). The trial court's decision to modify an award of alimony is reviewed on appeal under the abuse of discretion standard. *Wegner, supra.*

3. SDCL 25-4-41 provides:
   Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects.

In *Jameson v. Jameson*, 90 S.D. 179, 239 N.W.2d 5 (1976), this court rejected a claim that financial disadvantage arising through the fulfilment of the support terms of a stipulation was a change in circumstances justifying modification. As the court stated: "Defendant is getting exactly what he bargained for." *Id.*, 239 N.W.2d at 7. However, there is a distinct difference between *Jameson* and this appeal. The 1981 decree was not the result of a negotiated settlement; it was not an agreement which either party "bargained" to receive. Instead, the decree was the trial court's attempt to devise a plan whereby each party would be treated equitably.

■ Implicit in *Jameson* and *Thomerson v. Thomerson*, 387 N.W.2d 509 (S.D.1986) is the requirement that the circumstances presented to support modification be different from those existing at the time of the original award. However, in *Lambertz* this court held a reduction in income because of retirement was sufficient changed circumstances even though the trial court had been aware that the party might retire after the decree. Where an agreement *between the parties* assumes that certain events will happen and there is a failure of that assumption, our caselaw does not consider that failure a change in circumstances. However, when the trial court imposes a decision upon the parties which is based upon certain assumptions, the courts should be available to modify the decision so that the intended goals of the original decision are met.

■ Husband argues that Wife has presented no evidence of any change in circumstances other than her "unsupported allegations" of economic need. The trial court found the following "significant and material" changes in Wife's circumstances:

1) forced sale of home;
2) loss of rental income of $250 per month from rent of the basement apartment;
3) moving expenses in leaving the home;
4) loss of child support funds;
5) loss of alimony or housing payments;
6) no lump-sum equity received upon sale of the house; and
7) loss of economic sufficiency.

The first five changes noted above are all the result of the operation of the judgment and were fully anticipated by the original trial court. However, it also appears Judge Christensen anticipated that his "plan" would result in a significant equity developing in the marital home. It is inconceivable that the trial court would have purposely awarded Wife 70% of nothing. The trial court apparently believed that support payments to Wife would not be necessary upon the sale of the house and the receipt of 70% of the net proceeds from the sale. Modification of alimony awards is predicated on the belief that the trial court cannot foresee all circumstances which may arise after the original decree is entered. Faced with limited assets of little value, the original trial court attempted to use the alimony payments to enhance the value of the one significant marital asset. The attempt failed. Judge Kean correctly determined the intent of the original trial court was to provide support to allow Wife to gain some economic self-sufficiency. The fact that the trial court's original "plan" did not succeed should not be held against Wife. Her circumstances are clearly different from those anticipated by the original trial court. Therefore, modification of this support award is warranted under SDCL 25–4–41, which allows the court to modify its order in these respects from time to time. The trial court did not abuse its discretion in modifying the alimony award.

### 3. PAYMENT OF SUPPORT PENDING APPEAL

Husband moved for a stay of judgment pending appeal or, in the alternative, an order allowing him to deposit the monthly payments into an escrow situation. The trial court denied this motion.

■ A grant of a stay of judgment pending appeal is based upon the desirability of maintaining the parties in status quo until a final determination is made. *Wentzel v. Huebner*, 78 S.D. 471, 104 N.W.2d

476 (1960). Here, although an appellate decision adverse to Wife would have forced Husband to seek reimbursement of support paid pending appeal, a stay of judgment would have placed Wife in an immediate adverse economic situation. Faced with this dilemma, and in light of our decision on appeal, we cannot say that the trial court acted improperly.

### 4. CONTINUING MORTGAGE PAYMENTS

At the time of the modification hearing, the house had been placed on the market and had not been sold. Husband insisted upon Wife vacating the premises to facilitate the sale of the home. Husband filed a motion for a ruling on the mortgage payments pending sale. The trial court ordered that each party pay one-half of the monthly mortgage payment until the house was sold. Apparently, the house was sold for a loss shortly after commencement of this appeal.

■■■ It is clear that under the original decree the circumstances requiring the house be sold had occurred. It is equally clear that unless the mortgage payments were made, the property could have been foreclosed upon preventing either party from receiving any possible gain on the sale of the home. Although the trial court was justified in requiring Husband and Wife to share these payments, the percentages should have reflected the percentage interest of each party in the asset (or liability). To require Husband to pay an additional twenty percent would be permissible only if such payments were part of Husband's continuing support obligation to Wife. The record is not clear on this point. Therefore, we remand to the trial court for reimbursement or adjustment, as necessary, on this issue.

Wife has filed a petition requesting attorney's fees and costs in the amount of $2,794.20 under *Malcolm*. After considering the appropriate factors, including the property owned by each party, their respective incomes, and the liquidity of each party's assets, we award $1,500.00 to Wife. *Cole v. Cole*, 384 N.W.2d 312 (S.D.1986);

*Harvey v. Harvey*, 383 N.W.2d 862 (S.D. 1986).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Having treated this as a property settlement agreement for years, and the property settlement having run its course, the ex-wife (to obtain alimony payments) now proclaims, in essence, it was alimony from the beginning. This Court continues its paradoxical alimony march, notwithstanding the "liberation of women" and, in effect, holds: "Yes, you parties did not know all along what you were saying for years when you did not call it alimony; and neither did the Internal Revenue Service, who did not treat these periodic payments as alimony." We have a legal flip-flop here by the ex-wife, for she reverses her position and now claims these periodic payments were alimony when in truth and in fact, she professed to the world therebefore, to include the Internal Revenue Service, that they were not. We have before us a type of alimony shell game. First you do not see it, then later you do.

Not one time, in the divorce decree, was the word alimony mentioned. In fact, back in the original divorce proceedings, wife did not even mention alimony in her proposed findings of fact and conclusions of law. Obviously, if alimony was never awarded (and it was not), modification of an alimony award is legally impossible. From my reading of the record, I cannot see where the ex-wife ever requested alimony at the time the original divorce became final. Yet, like a money geyser, it erupts for the first time years subsequent to the original decree. A golden oldie in this Court is *Cameron v. Cameron*, 31 S.D. 335, 140 N.W. 700 (1913), where the ex-wife sought a modification to obtain permanent alimony but where she was never originally awarded alimony. In *Cameron*, she stated that she needed the alimony and her husband

could pay it. In this case, I note that the trial court entered a memorandum decision on June 16, 1987, which it incorporated in its findings of fact. The trial court expressed and recognized that the prime reason for extending the "alimony" was based upon the ex-wife's economic need. End of a golden oldie? Do we say, as the Japanese do, sayonara to that well-established precedent which I first learned in law school and then kept at my command as a young, fledging lawyer in this state nearly 40 years ago?

This decision violates our holding in *Blare v. Blare*, 302 N.W.2d 787 (S.D.1981), which has been cited with approval many times in this Court. "In the absence of fraud or other reasons that would apply to any judgment, a divorce decree that divides or allots property or provides for payment of a gross sum in lieu thereof is a final and conclusive adjudication and cannot be subsequently modified." *Id.* at 790. This decision also violates our holding in *Holt v. Holt*, 84 S.D. 671, 674, 176 N.W.2d 51, 53 (1970), which provides that when a gross or lump sum is allowed the wife as alimony, finality attaches, and the fact that the court chooses to make it payable in installments over a fixed period (usually for the benefit of the payor) does not destroy its finality or alter the rule. *Holt, id.; see also Blare*, 302 N.W.2d at 790. By the authority of *Blare* and *Holt*, ex-wife's argument (another shell game), that the trial court's reduction of payments by only $106 upon one child's attaining majority indicates that the payments were both child support and alimony, is futile, because fixed awards like these are immutable.

In reviewing this case, the findings of fact and conclusions of law specify that the parties had very little equity in the home when they were divorced. To increase the equity, the trial court (Judge Christensen) required the ex-husband to continue to make payments on the home. Obviously, this increased the equity in the property. Ex-wife was allowed 70% interest, as a division of property, in the equity. No change in the time element, as to when she was to receive these benefits, was entered when it increased from a 50% equity to a 70% equity. Therefore, it was the court's intent to have these payments treated as periodic property payments to increase the equity. Perforce, those payments are not subject to modification. *Holt*, 176 N.W.2d at 53. There simply is no jurisdiction for the trial court to consider modification. For the trial court to determine that these periodic payments were alimony is judicial error.

Another gross misconception by the trial court and the majority opinion is portrayed by the following analysis. This house payment, the trial court held, was to be legally terminated upon the ex-wife's death or marriage; therefore, the trial court reasoned that this was alimony. However, this can be pierced by reading the findings of fact and conclusions of law which do not lend any credence to a determination that the payments ended when the ex-wife either died or remarried. *See* 1981 Conclusion of Law No. 5 for the exact words supporting my statement. Rather, the payments were to end only upon the occurrence of two in future circumstances, namely: (1) When the parties' youngest child either reached the age of 18; or (2) said youngest child finished high school, whichever occurrence was the later event. Only the death or remarriage of the ex-wife changed, or could change, her ability to remain in the home prior to the occurrence of those two events. It is evident that her right to remain in the home differed from her right to receive continued payments. Such a distinction was clearly identified in the original findings of fact and conclusions of law.

In conclusion, I wish to express that this is not a complex case. The decree awarded property in lieu of alimony. Ex-wife never treated the payments as alimony for tax purposes, nor did the ex-husband, nor did the Internal Revenue Service, notwithstanding the availability of such treatment. These payments, by the ex-husband unto the ex-wife, had the same characteristics as the payments in *Blare*, except that in the *Blare* decision they were specifically identified as being, in part, an amount of alimony. When ex-wife realized the payments

would stop, she whirled and took an entirely new legal position. Fortunately for her, and unfortunately for her ex-husband, the shell game has worked and the geyser bubbles up with that monetary elixir we legally dub "alimony."